UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Shawn Evans,

        Plaintiff,

                 **Hon. Hugh B. Scott**

                 12CV365

       v.

                 **Order**

Officer P. Murphy et al.,

        Defendant.
_____

   Before the Court is the plaintiff's motion to amend the complaint (Docket No. 9); plaintiff's motion for appointment of counsel (Docket No. 20); as well as various motions to compel discovery (Docket Nos. 17, 23, 29 and 30).

**Background**

   The plaintiff, Shawn Evans ("Evans"), commenced this action alleging that he was assaulted by various correctional officers while incarcerated at the Southport Correctional Facility ("Southport"). (Docket No. 1). Evans alleged that on January 13, 2012, Officers P. Murphy ("Murphy"), G. Reppert ("Reppert"), S. Davis ("Davis"), J. Terribilini ("Terribilini"), and R. Pulsifer ("Pulsifer") ran into his cell and assaulted him because he filed a grievance. (Docket No. 1 at page 5). He also alleged that Officer E. Rozell ("Rozell") kicked him in the stomach, punched him in the face, and called him a "stupid faggot." (Docket No. 1 at page 5).

1

Officer Reppert is alleged to have punched the plaintiff in the stomach and called him a "stupid niggar." (Docket No. 1 at page 5). Evans asserts that defendant Pulsifer was present but took no action to stop the assault. The plaintiff claims that he suffered a cut to his left thigh, back and shoulder injuries, a swollen face and several abrasions. (Docket No. 1 at page 5). Evans asserted that on December 31, 2011, Officers Davis, Rozell and J. Yung[1] ("Yung"), and other officers, came into his cell. According to the plaintiff, "Davis took [off] his jacket and stated: 'I am tired of you niggars giving me a hard time.' Officer Rozell stated: 'You can fight a one on one;' and I went: 'Jump in.' " (Docket No. 1 at page 6)(Punctuation added). Evans does not allege that any physical altercation took place, but states that Yung was present and watched the other officers harass him. He was then denied recreation for that day. (Docket No. 1 at page 6).

Before the original complaint was served upon the defendants, the plaintiff filed an Amended Complaint which contains the same claims relating to December 31, 2011 and January 13, 2012 as the original complaint. The Amended Complaint adds Yung (spelled "Young") as a defendant (although referred to in the body of the original complaint, Yung was not listed as a defendant in the caption). The Amended Complaint also adds a few details such as that the alleged assault on January 13, 2012 was in response to the fact that Evans had filed a grievance against Davis and Rozell; and that the officers wrote a fabricated misbehavior report against him as a result of this incident. (Docket No. 3 at page 3).

The Amended Complaint was served upon defendants Pulsifer (Docket No. 5) and Yung (spelled "Young") (Docket No. 6). An answer was filed on behalf of all defendants on July 26,

---

[1] The plaintiff sued this individual as "Young," however the defendant is identified as "Yung" on the docket and in papers filed by defendants' counsel. (Docket No. 13)

2

2012. (Docket No. 7).

After a scheduling order was issued (Docket No. 8), the plaintiff filed a Second Amended Complaint (Docket No. 9). Because the plaintiff could no longer amend the complaint as of right, the Court construed this filing as a motion to amend the complaint. (Docket No. 12). The defendants oppose the motion to amend the complaint (Docket No. 13). The plaintiff filed a reply in support of the motion to amend. (Docket No. 45).[2]

**Motion to Amend**

The plaintiff seeks to file a Second Amended Complaint (Docket No. 9). This complaint again restates the December 31, 2011 and January 13, 2012 incidents, but purports to add Nurse J. Clement ("Clement") and Superintendent T. Griffin ("Griffen") as defendants. In this regard, the proposed Second Amended Complaint states only: "Nurse J. Clement who was the nurse on duty didn't document my injuries and fabricated reports covering the incident up for the officers. Superintendent Griffin knew about both incidents and failed to do anything about the matter." (Docket No. 9 at page 4). The Second Amended Complaint also purports to name each of the defendants "individually and in their official capacities." (Docket No. 9 at page 1). Finally, the Second Amended Complaint also includes additional allegations relating to the December 31, 2011 and January 13, 2012 incidents. For example, with respect to the December 31, 2011 incident, Evans asserts that he wrote Griffin and asked him to stop the staff from harassing him. As to the January 13, 2012 incident, Evans included new details such as: Davis and Terribilini

---

[2] The plaintiff dated the Reply Memorandum of Law May 10, 2013, but the document was stamped received by the Court on May 9, 2013.

"held" the plaintiff while the other officers assaulted him; and that Reppert choked Evans. (Docket No. 9 at pages 3-4).

Generally, Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a party's pleading "shall be freely given when justice so requires." Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." Monahan v. New York City Dep't of Corrs., 214 F.3d 275, 283 (2d Cir.2000). However, " '[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend.' " Lucente v. International Business Machines Corp., 310 F.3d 243, 258 (2d Cir.2002) (quoting Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir.1993) (per *curiam*)). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir.2007); Pappas v. Bank of America Corp., 2009 WL 382602 at *2 (2d. Cir. 2009). An amendment is futile where it is legally insufficient on its face such that the amended claim could not survive a motion to dismiss. Fillmore East BS Finance Subsidiary LLC v. Capmark Bank, 2013 WL 1294519 (S.D.N.Y. 2013) citing Lucente v. IBM Corp., 310 F.3d 243, 258 (2d Cir.2002). A claim can only withstand a Rule 12(b)(6) motion, of course, if it contains sufficient facts to " 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

The defendants oppose the motion to amend on several grounds. First, the defendants assert that the Second Amended Complaint would be futile to the extent that it seeks to assert the claims against the defendants in their official capacities. The plaintiff's reply papers do not

address this argument. It is well-settled that claims for damages against state officers in their official capacities is barred by the Eleventh Amendment. Amaker v. New York State Dept. of Correctional Services, 435 Fed.Appx. 52 (2d. Cir. 2011). Thus, to the extent the plaintiff sought to amend the complaint to assert claims against the individual defendants in their official capacities, the motion to amend is denied.

The defendants also object to the addition of Clement and Griffin as defendants, arguing that the plaintiff's proposed Second Amended Complaint fails to allege sufficient personal involvement by these individuals and otherwise fails to state a claim upon which relief can be granted. (Docket No. 13 at pages 4-7). Again, the plaintiff's reply papers do not address these arguments.

With respect to the proposed claim against Griffin, "[i]t is well settled in the Second Circuit that mere receipt of a letter from an inmate, without more, does not constitute personal involvement for the purposes of section 1983 liability." A'Gard v. Perez, 2013 WL 298377 (S.D.N.Y. 2013) citing Smith v. Masterson, 2006 WL 2883009, at *13 (S.D.N.Y. 2006) and Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir.1997) (dismissing claims against DOCS Commissioner where his personal involvement was limited to receiving two letters from plaintiff)). The conclusory assertion in this case is that Evans sent a letter to Griffin after the alleged verbal harassment on December 31, 2011. The plaintiff makes no assertion that Griffin was personally involved in the harassment or that Griffin had knowledge of any specific threat against Evans. Such a claim would not survive a motion to dismiss under the standard set forth in Iqbal.

Similarly, the plaintiff's proposed claim against Clement is also futile. The proposed complaint does not assert that Clement was personally involved in either the December 31, 2011

5

or January 13, 2012 incidents or that Clement was deliberately indifferent to the plaintiff's medical needs. Instead, the plaintiff asserts that Clement failed to document Evans' injuries to cover-up the incident. Such a claim does not state a constitutional claim. A similar claim was rejected in LeBlanc v. Gerry, 2012 WL 2374206 (D.N.H.,2012). In LeBlanc, the plaintiff claimed that officials attempted to cover up an alleged assault. As in the instant case, the Court in LaBlanc noted that it was unclear what rights the plaintiff asserts were violated by the alleged cover-up. The Court held that "[e]ven if the complaint were construed as alleging an agreement among the defendants to cover up the assault, the plaintiff has failed to state a cognizable claim." citing Thore v. Howe, 466 F.3d 173, 178–79 (1st Cir.2006) (dismissing conspiracy claim where no "deprivation of a right secured by the Constitution or laws" alleged). See also Mortimer Excell v. Fischer, 2009 WL 3111711 (N.D.N.Y. 2009)(Dismissing plaintiff's claim that a prison nurse falsified his medical records so as to cover up the alleged assault, and another prison official participated in the conspiracy by instructing that no photographs be taken of inmate's injuries after the alleged assault); Sowell v. Chappius, 695 F.Supp.2d 16 (W.D.N.Y. 2010)(dismissing claim that correctional officer wrote a false misbshavior report to cover up for other officers who had allegedly assaulted the plaintiff on the ground that a "prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report" and "courts have dismissed claims alleging the issuance of false misbehavior reports as part of a 'coverup' attempt."). Thus, this claim would also fail the Iqbal test.

      As noted above, the plaintiff does not discuss these issues in his motion papers, but

6

instead asserts that his original complaint[3] "was defective" because it did not state the personal involvement of each defendant. (Docket No. 45 at page 2).[4] The plaintiff will be permitted to supplement the Amended Complaint with additional averments relating to the respective roles of the current defendants in the alleged incidents.

In light of the above, the motion to amend the complaint is ***denied*** to the extent that it seeks to assert claims against the individual defendants in their official capacities, or to add Clement or Griffin as defendant in this case. The Second Amended Complaint (Docket No. 9), is deemed to be a supplement to the Amended Complaint to the extent that it alleges more specificity regarding the personal involvement of the original defendants in the December 31, 2011 and January 13, 2012 claims. <u>The defendants are directed to file an amended answer by June 21, 2013 responding to any new factual averments asserted against the current defendants relating to their roles in the December 31, 2011 and January 4, 2012 incidents</u>.

**Motions to Compel**

The plaintiff has filed various motions to compel. The plaintiff seeks to compel the defendants to produce the personnel files of the respective defendants. (Docket No. 17). The

---

[3] It is unclear whether Evans is actually referring to the original complaint or the First Amended Complaint.

[4] The plaintiff's reply with respect to the instant motion contains a sentence referring to a "defendant C. Koeigmann" who is purportedly the "chief medical officer responsible for approving and disapproving specialist consultant requests." (Docket No. 45 at page 3). None of the proposed complaints filed by the plaintiff in this case named this individual as a defendant or alleges any medical issue. Thus, this reference does not appear to relate to the instant action in any way. The Court notes that Carl Koeigmann is a defendant in a separate and distinct case brought by the plaintiff, Civ. No. 12CV570.

defendants have cross-moved for a protective order (Docket No. 20). The sole issue raised[5] in the plaintiff's motion, which is one-paragraph long, is a request for the Court to direct the defendants to turn over "personnel files including information from internal affairs or personal standards in accordance with Civil Rights Law 50-a." (Docket No. 17).[6]

The defendants argue that these documents are in the possession of the New York State Department of Corrections and Community Supervision ("DOCCS") and not the individual defendants, and thus, are not subject to discovery in this matter. (Docket No. 21 at page 8). The Court cannot compel a non-party to produce documents based upon a Rule 34 discovery demand served upon a party. The Court can only compel the defendants to produce documents that are withing their possession, custody or control. The Court is also aware that the information in personnel files is considered privileged under New York State law. In federal civil rights cases, issues of privilege are governed by federal, not state, law. It is undisputed that under federal law,

---

[5] In a reply to the defendants' motion for a protective order, the plaintiff contends that his motion to compel "specifically requested that the defendants ... turn over to plaintiff all written complaints filed against them to their employee and Inspector General Office by plaintiff and other prisoners prior to the plaintiff's complaint and after." (Docket No. 26 at page 3). Such specific language is not contained in the motion to compel (Docket No. 17). In any event, discovery relating to such matters will be limited as discussed below.

[6] The defendants' response opposes the plaintiff's motion to compel on the grounds that the plaintiff failed to comply with Rule 37 of the Federal Rules of Civil Procedure because he did not certify that he made a good faith attempt to resolve the discovery dispute with defendants' counsel. (Docket No. 21 at page 5). While this rule does apply to *pro se* litigants, under the circumstances of this case and in the interests of moving this case forward, the Court will address the motion. Similarly, in a letter dated April 1, 2013, the plaintiff argues that the defendants' responses to his various discovery requests be deemed admitted because the defendants did not respond within 30 days. This argument was rejected in Ippolito v. Goord, 2008 WL 2776864 (W.D.N.Y. 2008)(Payson, MJ)(defendant did not waive his right to object to the specific interrogatories by failing to respond within thirty days. Plaintiff has not been prejudiced by defendant's delay in answering. Indeed, discovery has continued for over a year since the answers were filed.) For similar reasons, the plaintiff's request in the instant matter is denied.

New York Civil Rights Law § 50-a does not prohibit discovery of police personnel documents. Martin v. Lamb, 122 F.R.D. 143, 146 (W.D.N.Y. 1988). That does not mean that the state statute is to be given no effect. According to the New York State Court of Appeals, the legislative intent underlying the enactment of §50-a was enacted to prevent time consuming and perhaps vexatious investigation into irrelevant collateral matters in the contest of a civil or criminal action, and to avoid embarrassment and harassment of testifying officers by cross-examination concerning "unsubstantiated and irrelevant" matters in their personnel files. See Matter of Capital Newspapers v. Burns, 67 N.Y.2d 562 (1986). Generally, the Court will direct the production of documents contained in the personnel file of an officer only if the documents are relevant and involved disciplinary action taken against the officer. See Diaz v. Goord, 2007 WL 2815735 (W.D.N.Y. 2007)(Payson, M.J.)(directing disclosure of documents relating to disciplinary action imposed on the defendants in connection with allegation of excessive force); Wright v. Goord, 2008 WL 2788287 (W.D.N.Y. 2008)(Payson, M.J.)(directing search of personnel files for documents relating to disciplinary action taken against defendants based upon the use of excessive force). It is unlikely that documents relating to unsubstantiated claims of excessive force would lead to admissible evidence. See Crenshaw v. Herbert, 409 Fed.Appx. 428 (2d. Cir. 2011)(the district court did not abuse its discretion by denying plaintiff's motion to compel production of defendant's personnel file; the court properly relied on defense counsel's affirmation that the file contained no relevant disciplinary records; even if evidence of a prior *substantiated* excessive force investigation existed, on the facts of the particular case before us such evidence would be inadmissible to show that defendant acted violently in this instance). Crenshaw, 409 Fed.Appx. at 430 citing Fed.R.Evid. 404(b). See also DiRico v. City of Quincy,

404 F.3d 464 (1st Cir. 2005)(district court in arrestee's § 1983 action against police officer for injuries sustained in arrest did not plainly err in excluding evidence of an earlier arrest by officer that resulted in a complaint of use of excessive force; evidence had no special relevance to any issue in action, evidence relating to a single, unsubstantiated claim of use of excessive force had limited probative value, and admission would have created danger that jury would render verdict on improper basis that officer was prone to engaging in violent behavior.). In light of the above, the defendants are directed to produce to the Court for ***in camara review*** only those documents in their possession, custody or control which relate to any claims of excessive use of force involving any of the individual defendants which has been substantiated upon the conclusion of an internal administrative investigation or court proceeding. The defendants shall produce this material for *in camara* review within 30 days of the date of this Order.[7]

The defendants have cross-moved for an order precluding the plaintiff from serving further discovery demands in this case. The docket reflects that the plaintiff has filed the following discovery demands: a request for admissions (Docket No. 10); request for documents (Docket No. 11); request for documents (Docket No. 14); request for admissions (Docket No.

---

[7] The plaintiff filed two additional motions seeking relief similar to that requested in his original motion to compel (Docket No. 17). Evans' second motion to compel (Docket No. 23) again seeks production of the defendants' personnel files. (Docket No. 23 at pages 2-3). To this extent the motion is resolved by the instant Order. This motion also seeks to demand responses to unspecified "interrogatories, admissions and production of documents." (Docket No. 23 at page). Because the plaintiff fails to identify any specific outstanding discovery demand, the motion is insufficient. The Court notes that the defendants have since filed numerous responses to the plaintiff's various discovery demands. (Docket Nos. 31-44). The plaintiff's motion to compel (Docket No. 23) is denied without prejudice. Similarly, the plaintiff filed another motion to compel (Docket No. 30) production of documents "relevant to past mistreatment of inmates by defendants" including "any and all grievances, complaints or other documents" concerning the mistreatment of inmates by the defendants. (Docket No. 30 at pages 2-3). This motion to compel is also resolved by the instant Order.

24); request for answers to interrogatories (Docket No. 27). The Court notes that the defendants have filed responses to the various discovery demands of the plaintiff (Docket Nos. 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44). Except as is the subject of the various motions to compel in this case, it would appear that discovery is substantially completed. Based upon the current record, the motion for a protective order is denied without prejudice. Should the plaintiff file additional discovery demands which would reflect an abuse of the discovery under the Federal Rules of Civil Procedure, the Court will consider an appropriate motion for sanctions.

Designated on the docket as a motion to compel (Docket No. 29), the plaintiff also filed a motion seeking to preclude the following individuals from testifying at any trial in this matter: L. Tillinghast; R. McIntosh; J. Gleckner, G. Carrigan; and C. Bennett. The plaintiff claims that these individuals lack personal knowledge of the plaintiff's claims, and thus, should be precluded from testifying. (Docket No. 29 at page 2). Whether an individual may be allowed to testify at trial is a decision to be made by the judge presiding over the trial, based upon a review of the scope of the proffered testimony by such witnesses. The plaintiff's motion (Docket No. 29) is denied without prejudice as premature.[8]

**Motion for Appointment of Counsel**

Finally, the plaintiff has filed a motion for the appointment of counsel in this matter. (Docket No. 20). There is no constitutional right to appointed counsel in civil cases. However,

---

[8] The plaintiff has also forwarded a letter to the Court dated October 10, 2012, in which he states that he is being retaliated against because he has brought various lawsuits and asks the Court to direct that he be transferred to another correctional facility. Such matters are outside of the scope of this lawsuit and the beyond the jurisdiction of the Court.

11

under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants. *See, e.g.*, Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc., 865 F.2d 22, 23 (2d Cir. 1988). Assignment of counsel in this matter is clearly within the judge's discretion. In re Martin-Trigona, 737 F.2d 1254 (2d Cir. 1984). The factors to be considered in deciding whether or not to assign counsel include the following: (1) Whether the indigent's claims seem likely to be of substance; (2) Whether the indigent is able to investigate the crucial facts concerning his claim; (3) Whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder; (4) Whether the legal issues involved are complex; and (5) Whether there are any special reasons why appointment of counsel would be more likely to lead to a just determination. Hendricks v. Coughlin, 114 F.3d 390, 392 (2d Cir. 1997); *see also* Hodge v. Police Officers, 802 F.2d 58 (2d Cir. 1986); Carmona v. United States Bureau of Prisons, 243 F.3d 629, 632 (2d Cir.2001); Abdur-Raqiyb v. Erie County Medical Center, 2006 WL 1800710, at *1 (W.D.N.Y.,2006).

The Court has reviewed the facts presented herein in light of the factors required by law as discussed above. The record reflects that the legal issues presented are not unduly complex and that the plaintiff can adequately prosecute his claim *pro se*. Based on this review, plaintiff's motion for appointment of counsel is denied without prejudice at this time. It is the plaintiff's responsibility to retain an attorney or press forward with this lawsuit *pro se*. 28 U.S.C. § 1654.

**Amended Scheduling Order**

By letter dated May 16, 2013, the defendants have requested an extension of time for the filing of dispositive motions. The extension request is based upon the fact that dispositive

motions could not be filed until the various discovery motions in this matter were resolved. The parties have not requested the extension of any other dates in this case.

As discussed above, the defendants have been directed to file an answer to the supplemental allegations included in the Second Amended Complaint. In addition, the defendants have been directed to produce certain documents for *in camara* review within 30 days of the date of this Order. It appears that all other discovery has been completed. In light of the above, dispositive motions, if any, shall be filed on or before August 30, 2013.

So Ordered.

                                              /s/ Hugh B. Scott
                                              United States Magistrate Judge
                                              Western District of New York

Buffalo, New York
May 22, 2013