UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Shawn Evans,

                          Plaintiff,                    **Hon. Hugh B. Scott**


                                                         12CV365


                          v.                            **Order**



Officer P. Murphy et al.,

                          Defendant.

_____



        Before the Court is the plaintiff's motion for a temporary restraining order (Docket No.

49) and the defendants' motion for summary judgment (Docket No. 56).



                                **Background**

        The plaintiff, Shawn Evans ("Evans"), commenced this action alleging that he was

assaulted by various correctional officers while incarcerated at the Southport Correctional

Facility ("Southport"). (Docket No. 1).  Evans alleged that on January 13, 2012, Officers P.

Murphy ("Murphy"), E. Rozell ("Rozell"), G. Reppert ("Reppert"), S. Davis ("Davis"), J.

Terribilini ("Terribilini"), and R. Pulsifer ("Pulsifer") ran into his cell and assaulted him because

he filed a grievance. (Docket No. 1 at page 5).  He alleged that Rozell kicked him in the stomach,

1

punched him in the face, and called him a "stupid faggot." (Docket No. 1 at page 5). Officer

Reppert is alleged to have punched the plaintiff in the stomach and called him a "stupid niggar."

(Docket No. 1 at page 5). Evans asserts that defendant Pulsifer was present but took no action to

stop the assault. The plaintiff claims that he suffered a cut to his left thigh, back and shoulder

injuries, a swollen face and several abrasions. (Docket No. 1 at page 5). Evans asserted that on

December 31, 2011, Officers Davis, Rozell and J. Yung[1] ("Yung"), and other officers, came into

his cell. According to the plaintiff, "Davis took [off] his jacket and stated: 'I am tired of you

niggars giving me a hard time.' Officer Rozell stated: 'You can fight a one on one;' and I went:

'Jump in.' " (Docket No. 1 at page 6)(punctuation added). Evans does not allege that any

physical altercation took place at that time, but states that Yung was present and watched the

other officers harass him. He was then allegedly denied recreation for that day. (Docket No. 1 at

page 6).

Before the original complaint was served upon the defendants, the plaintiff filed an

Amended Complaint which contains the same claims relating to December 31, 2011 and January

13, 2012 as the original complaint. The Amended Complaint adds Yung (spelled "Young") as a

defendant (although referred to in the body of the original complaint, Yung was not listed as a

defendant in the caption). The Amended Complaint also adds a few details such as that the

alleged assault on January 13, 2012 was in response to the fact that Evans had filed a grievance

against Davis and Rozell; and that the officers wrote a fabricated misbehavior report against him

as a result of this incident. (Docket No. 3 at page 3). After the defendants filed an answer

---

[1] The plaintiff sued this individual as "Young," however the defendant is identified as "Yung" on the docket and in papers filed by defendants' counsel. (Docket No. 13)

(Docket No. 7) in this case and a scheduling order was issued (Docket No. 8), the plaintiff filed a

purported Second Amended Complaint adding two new defendants and supplementing the

allegations in support of his original claims. (Docket No. 9). Because the plaintiff could no

longer amend the complaint as of right, the Court construed this filing as a motion to amend the

complaint. (Docket No. 12).  The defendants opposed the motion to amend the complaint

(Docket No. 13). The Court determined that it would be futile to allow the amendment of the two

additional defendants, and denied the motion to amend to that extent, but allowed the proposed

Second Amended Complaint to constitute a supplement to the Amended Complaint regarding the

averments against the original defendants. (Docket No. 46 at page 7).

    In summary, the plaintiff's two existing claims in this case are that he was harassed on

December 31, 2011 by Davis, Rozell, Yung (and possibly others), and assaulted in his cell on

January 13, 2012 by Murphy, Reppert, Davis, Terribilini, and Pulsifer.


**Temporary Restraining Order**

    The plaintiff asserts that he has been threatened and harassed by "several of the

defendants" because he filed the instant lawsuit against them. (Docket No. 49). The plaintiff

seeks an order directing the defendants to stop the harassment and that the plaintiff be transferred

to another correctional facility.  (Docket No. 49 at page 1).

    Preliminary injunctive relief "is an extraordinary remedy that should not be granted as a

routine matter." JSG Trading Corp. v. Tray–Wrap, Inc., 917 F.2d 75, 80 (2d Cir.1990). To obtain

a preliminary injunction or temporary restraining order, the moving party must show "that 1)

absent injunctive relief, it will suffer irreparable harm, and 2) either a) that it is likely to succeed

on the merits, or b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." Otokoyama Co. Ltd. v. Wine of Japan Import, Inc., 175 F.3d 266, 270 (2d Cir.1999). Motions for preliminary injunctions are "frequently denied if the affidavits [in support of the motion] are too vague or conclusory to demonstrate a clear right to relief under Rule 65." 11A C.Wright & A. Miller, Fed. Practice & Proc., Civil 3d § 2949 (2004); see, e.g., Malki v. Hayes, 2012 WL 32611 (E.D.N.Y.,2012)("Plaintiff's allegation that 'he will be irreparably harmed by all kinds of threats of harassment, intimidation, and stiff punishment' absent an injunction is speculative."); McGillicuddy v. Laidlaw, Adams & Peck, Inc., 1995 WL 1081307, at *12, n. 19 (S.D.N.Y. Aug.14, 1995) (summarily denying an application for preliminary injunctive relief where the movant's papers failed to demonstrate a basis for granting "this extraordinary remedy").

The defendants assert that the plaintiff has not demonstrated any actual or imminent harm. (Docket No. 52 at page 5). Indeed, aside from being denied recreation on five occasions in January 02 2013 (Docket No. 55 at page 2), the plaintiff fails to articulate the facts and circumstances regarding any harassing or threatening conduct by the defendants in this action.[2] The plaintiff fails to identify any specific individual as having threatened or harassed him. The Court finds that the plaintiff's allegations in support of the motion for a temporary restraining order are vague, conclusory and insufficient to warrant injunctive relief. In any event, inasmuch

---

[2] Evans has filed multiple civil rights actions. See Civil Nos. 12CV570 and 13CV805. In his reply to the defendants' response to the instant motion, the plaintiff notes that he was "assaulted again by several other defendants who are in another action before this Court." (Docket No. 55 at page 2). The conduct of individuals who are not defendants in this action cannot properly serve as the basis for injunctive relief against the defendants in this case.

as the record reflects that the plaintiff has been transferred to the Auburn Correctional Facility

(see Docket Entry dated January 10, 2014), the application for injunctive relief against the

defendants, who are employed at the Southport Correctional Facility, is moot.


**Motion for Summary Judgment**

Summary judgment is appropriate where there are no issues of material fact in dispute,

and the moving party is entitled to judgment as a matter of law.  See Trans Port, Inc. v. Starter

Sportswear, Inc., 964 F.2d 186, 188 (2d Cir. 1992) (citing Bryant v. Maffucci, 923 F.2d 979, 982

(2d Cir. 1991).  The Court must draw all reasonable inferences in favor of the non-moving party

and grant summary judgment only if no reasonable trier of fact could find in favor of the non-

moving party.  See Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991); Howley v. Town of

Stratford, 217 F.3d 141 (2nd Cir. 2000).  However, the non-moving party must, "demonstrate to

the court the existence of a genuine issue of material fact."  Lendino v. Trans Union Credit

Information, Co., 970 F.2d 1110, 1112 (2d Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S.

317, 324 (1986)). A fact is material:

> when its resolution would "affect the outcome of the suit under the
> governing law" and a dispute about a material fact is genuine "if
> the evidence is such that a reasonable jury could return a verdict
> for the non-moving party."

General Electric Company v. New York State Department of Labor, 936 F.2d 1448, 1452 (2d

Cir. 1991) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "The non-

moving party must come forward with enough evidence to support a jury verdict . . . and the . . .

motion will not be defeated merely . . . on the basis of conjecture or surmise." Trans Sport, 964

F.2d at 188 (citing Bryant v. Maffucci, 923 F.2d at 982).  If undisputed material facts are

properly placed before the court by the moving party, those facts will be deemed admitted, unless

they are properly controverted by the non-moving party."  Glazer v. Formica Corp., 964 F.2d

149, 154 (2d Cir. 1992) (citing Dusanenko v. Maloney, 726 F.2d 82 (2d Cir. 1984).  The Court's

responsibility in addressing a summary judgment motion is identifying factual issues, not

resolving them.  See Burger King Corp. v. Horn & Hardart Co., 893 F.2d 525, 528 (2d Cir.

1990).  However, summary judgment is appropriate "[w]here the record taken as a whole could

not lead a rational trier of fact to find for the non-moving party."  Nippon Fire & Marine Ins. Co.,

Ltd. v. Skyway Freight Systems, Inc., 235 F.3d 53 (2d Cir. 2000) (quoting Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).


**Evans' December 31, 2011 Claim**

The plaintiff asserts that he was verbally harassed on December 31, 2011. (Docket No. 1

at page 6).  The plaintiff has not alleged any physical injury relating to this claim. It is

well-settled that claims of verbal harassment, without more, are not actionable under § 1983.

Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir.1996) ("The claim that a prison guard called

[plaintiff] names also did not allege any appreciable injury and was properly dismissed.");

Mitchell v. New York State Dept. of Correctional Services, 2012 WL 6204205

(W.D.N.Y.,2012)(the plaintiff failed to state a colorable constitutional claim).  Evans has

acknowledged as much, stating: "Summary judgment should be granted on this Count. Plaintiff

agree with Defendants." (sic) (Docket No. 72 at page 5).

Based on the above, the defendants' motion for summary judgment with respect to the

plaintiff's December 31, 2011 claim should be granted.

**Evans' January 13, 2012 Claim**

The original complaint filed by Evans asserted that defendants Murphy, Reppert, Davis,

Terribilini and Pulsifer ran into his cell "and started assaulting me because I wrote a harassment

grievance. Now Officer Rozell kicked me in my stomach and punched me in my face and called

me a stupid faggot. Officer Reppert punched me in the stomach and called me a stupid nigger.

Sergeant Pulsifer was present and didn't tell the officers to stop the assault. Now I suffered a cut

to my left thigh, back and shoulder injury. I also had a swollen face, several abrasions." (Docket

No. 1 at page 5).

In his Amended Complaint, as it relates to the January 13, 2012 incident, the plaintiff

alleged:

> I was assaulted by Officer P. Murphy, Davis, Rozell, Reppert and
> Terribilini during showers because I wrote a harassment grievance
> against Davis and Rozell. Officer Rozell kicked and punched me in
> the stomach and face and called me a stupid nigger.[3] Officer
> Reppert punched me in the stomach and called me a nigger and
> said I deserve everything I am getting. Officer Davis was holding
> me along with Officer Terribilini, while Officer Rozell and Reppert
> assaulted me. Sergeant Pulsifer was standing there and didn't tell
> the officers to stop assaulting me. He just watched. The officers
> wrote fabricated misbehavior reports. I suffered a cut to my thigh,
> shin and both of my feet[4]. Also back and shoulder injury, a swollen
> face and several abrasions.

(Docket No. 3 at page 3).  Evans repeated these allegations in a supplemental filing. (Docket No.

---

[3]   This is inconsistent with Evans' original complaint in which he asserts that Rozell
called the plaintiff a "stupid faggot."

[4]   Evans did not mention injuries to his shin or feet in the original complaint.

9 at page 3).

At his deposition, Evans stated that on January 13, 2012, he was reading in his cell when officers came to take him for a shower. (Docket No. 71-1 at page 46). He stated that he had decided not to go for a shower because another inmate told Evans that he overheard Rozell and Pulsifer saying that they were going to retaliate against Evans. (Docket No. 71-1 at pages 47-49). The plaintiff states that when the defendants saw that he was not ready for his shower,[5] Murphy, Terribilini, Reppert, Pulsifer, Rozell and Davis entered his cell. (Docket No. 71-1 at page 56). Evans claims that Reppert cut his clothes off with a suicide prevention knife and a waist chain and shackles were put on him. (Docket No. 67-1 at page 9). After he was placed in these restraints, Evans claims that he was stood up and held by Davis and Terribilini while Rozell punched him in the stomach and in the face. (Docket No. 67-1 at pages 11, 14).  Then, again with Davis and Terribilini holding him, the plaintiff claims that Reppert punched him in the stomach and the face. (Docket No. 71-1 at pages 63, 60).  Evans claims that Pulsifer stood by and did nothing to stop Rozell and Reppert from punching him. (Docket No. 67-1 at page 14).[6]  Evans asserts that he was then taken to the shower area where Reppert started choking Evans and

---

[5]   The record reflects that at the scheduled shower time, an inmate is supposed to have stripped down to his underwear before the transport officers come to his cell to take the inmate to the shower. If you do not want to take a shower, you simply do not strip down to your underwear. The inmate does not even have to advise the officers that he does not want to take a shower. (Docket No. 71-1 at page 50).

[6]   Pulsifer states that at the time of the incident, he was at the end of the gallery and did not witness the application of the restraints or any use of force upon Evans. (Docket No. 60 at ¶ 11). Pulsifer also states that Evans did not name him in his grievance regarding the January 13, 2102 incident. (Docket No. 60 at ¶ 8).

"saying I wish I had never filed a grievance now." (Docket No. 67-1 at page 12).[7]

With respect to his alleged injuries, Evans acknowledges that when the officers came into his cell they told him not to move while they put on the waist chain and shackles. Notwithstanding, Evans stated that he was "moving wildly" and that he was kicking and thrashing his legs to resist the officers from putting on the waist chain and shackles.  Thus, Evans acknowledges that the cut on his thigh, as well as abrasions to his shin and feet were due to the fact that he was thrashing wildly while the officers were putting on the restraints. (Docket No. 67-1 at page 14-15).  The plaintiff asserts that he was not hit, pushed or kicked by the defendants while the restraints were being applied. (Docket No. 67-1 at page 10).  The plaintiff claims that his only injury relating to the alleged "punches" by Rozell and Reppert was that he suffered puffiness in his face for 2 or 3 days. (Docket No. 67-1 at page 28).  The plaintiff does not complain of any injury resulting from the alleged punches to his stomach or the purported choking.  Evans also asserts that the defendants aggravated preexisting injuries to his back and shoulder when they put the waist chain on him. (Docket No. 67-1 at pages 21, 23-26). However, Evans states that he does not believe that the defendants intended to hurt his back or his shoulder when placing the restraints on him. (Docket No. 67-1 at pages 24-26).

Murphy asserts that at Southport, before an inmate may be let out of his cell, even for showers, he must be placed in mechanical wrist restraints. (Docket No. 59 at ¶ 5). Murphy states that on January 13, 2012, Evans was "in the proper attire to go to showers and standing with his back to the cell door" so that Murphy was able to place the mechanical wrist restraints on him.

---

[7]  The first mention of the alleged choking is contained in the plaintiff's the proposed Second Amended Complaint. Evans did not include an allegation that he was choked in either the original Complaint or the Amended Complaint.

(Docket No. 59 at ¶ 6).  According to Murphy, as Evans was exiting his cell, "he turned aggressively to his left, towards me, and attempted to head-butt me." (Docket No. 59 at ¶ 7). Murphy stated that Evans was forced back into his cell where he landed on his bed with his feet on the floor.  Murphy stated that he was unable to control Evans , but that Evans was "kicking and struggling so vociferously" that he was unable to do so. Murphy directed Evans to stop resisting. Murphy was able to gain control of Evans' legs after Reppert applied mechanical leg restraints. (Docket No. 59 at ¶¶ 8-15).  Murphy denies that Reppert or Rozell[8]  struck Evans. Murphy states that he escorted Evans to the shower and that Reppert did not accompany Evans to the shower area.  (Docket No. 59 at ¶¶19-23).  Terribilini states that he was working the shower duty with Murphy on January 13, 2012. According to Terribilini, as Evans backed out of his cell, he turned violently to his left and tried to head butt Murphy. Terribilini helped Murphy get Evans back into his cell and tried to get Evans to stop thrashing. Terribilini states that Evans started to comply after leg restraints were successfully applied. (Docket No. 63 at ¶ 13). Once the leg restraints were applied, Terribilini assisted Evans to his feet and escorted him to the shower area. Terribilini states that Evans was not struck by anyone while in his cell or in the shower area. (Docket No. 63 at ¶ 16).

Reppert asserts that on January 13, 2012, he responded to Evans' cell relating to Evans attempted assault on Murphy and found Evans thrashing and kicking (as Evans admits doing). Reppert states that he was able to secure leg restraints on Evans and then helped him to his feet. (Docket No. 61 at ¶¶ 10-11). Reppert denies striking Evans and denies taking Evans to the

---

[8]  Murphy states that Rozell was working on another floor at the time of the incident, and that by the time Rozell arrived at the scene, Rozell was told that his assistance was not needed. (Docket No. 59 at ¶ 18).

shower area and choking him there. (Docket No. 61 at ¶¶12-18).  Rozell states that he was not

working on the first floor of "A" Block – where the incident took place– on January 13, 2012,

but instead was assigned to the third floor. (Docket No. 62 at ¶¶13-14). He states that he

responded to Evans' cell when a "use of force" call was made, but that by the time he arrived at

that location, he was told he was not needed and returned to the third floor. (Docket No. 62 at ¶

15).  Rozell denies striking Evans. (Docket No. 62 at ¶ 20).  Davis states that he was not working

on the first floor of "A" Block on January 13, 2012, and did not respond to Evans' cell in any

way on that date. (Docket No. 58 at ¶¶ 14- 15).


Eighth Amendment Standard

    The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" on

those convicted of crimes, which includes punishments that "involve the unnecessary and wanton

infliction of pain." Gregg v. Georgia, 428 U.S. 153, 173 (1976). A claim of cruel and unusual

punishment in violation of the Eighth Amendment has two components-one subjective, focusing

on the defendant's motive for his conduct, and the other objective, focusing on the conduct's

effect. See Wright v. Goord, 554 F.3d 255, 268 (2d. Cir. 2009) citing Hudson v. McMillian, 503

U.S. 1, 7-8,  (1992) and Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir.1999). The subjective

component of the claim requires a showing that the defendant "had the necessary level of

culpability, shown by actions characterized by 'wantonness' " in light of the particular

circumstances surrounding the challenged conduct. Wright, 554 F.3d at 268 (internal citations

omitted). When prison officials are accused of using excessive force, the "wantonness" issue

turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or

maliciously and sadistically to cause harm." <u>Hudson</u>, 503 U.S. at 7; see also <u>Blyden</u>, 186 F.3d at 262-63.

Objectively, the plaintiff must show that the alleged use of force is grave or harmful enough to be actionable. Only the use of physical force that is "repugnant to the conscience of mankind" amounts to a constitutional violation. <u>Whitley v. Albers</u>, 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). Conversely, the Constitution's "prohibition of 'cruel and unusual' punishments necessarily excludes ... *de minimis* uses of physical force." <u>Hudson v. McMillian</u>, 503 U.S. 1, 9-10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The Second Circuit, for example, has noted that not "every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates a prisoner's constitutional rights."<u>Johnson v. Glick</u>,  481 F.2d 1028, 1033 (2d Cir.), cert. denied sub nom. <u>John v. Johnson</u>,  414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

Notwithstanding, the "core judicial inquiry" in an Eighth Amendment excessive force case is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 37 (2010). In <u>Hudson</u> the Court emphasized that "[w]hen prison officials maliciously and sadistically use force to cause harm," "contemporary standards of decency always are violated ... whether or not significant injury is evident." <u>Hudson</u>, 503 U.S. at 9.  In <u>Wilkins</u>, the Court stated that it was improper to read <u>Hudson</u> as merely "lower[ing] the injury threshold for excessive force claims from 'significant' to 'non-*de minimis'*—whatever those ill-defined terms might mean." <u>Wilkins</u>, 559 U.S. at 39. Instead, the

Supreme Court explained that <u>Hudson</u> "aimed to shift the 'core judicial inquiry' from the extent

of the injury to the nature of the force—specifically, whether it was nontrivial and 'was applied

... maliciously and sadistically to cause harm.'" <u>Wilkins</u>, 559 U.S. at 35 quoting <u>Hudson</u>, 503

U.S. at 7. The Supreme Court identified several factors to be considered in determining whether

the use of force violates the Eighth Amendment:

> [T]he extent of injury suffered by an inmate is one factor that may
> suggest whether the use of force could plausibly have been thought
> necessary in a particular situation, or instead evinced such
> wantonness with respect to the unjustified infliction of harm as is
> tantamount to a knowing willingness that it occur. In determining
> whether the use of force was wanton and unnecessary, it may also
> be proper to evaluate the need for application of force, the
> relationship between that need and the amount of force used, the
> threat reasonably perceived by the responsible officials, and any
> efforts made to temper the severity of a forceful response. The
> absence of serious injury is therefore relevant to the Eighth
> Amendment inquiry, but does not end it.

<u>Hudson</u>, 503 at 7.

Even accepting the plaintiff's version of facts as true, the defendants argue that the

plaintiff cannot satisfy the objective element, that the plaintiff suffered an injury sufficiently

serious to rise to a constitutional dimension.  The defendants cite to six cases in support of the

proposition that the plaintiff's alleged injuries in this case are so *de minimus* that the do not rise

to a constitutional dimension. Several of those cases were decided prior to the Supreme Court's

2010 decision in <u>Wilkins</u>, which clarified the standard set forth in <u>Hudson</u>. See <u>Headley v.</u>

<u>Fisher</u>, 2008 WL 1990771 (S.D.N.Y.,2008); <u>Sprau v. Coughlin</u>, 997 F.Supp. 390

(W.D.N.Y.,1998)(Larimer, D. J.); <u>Yearwood v. LoPiccolo</u>, 1998 WL 474073 (S.D.N.Y.,1998);

<u>Brown v. Busch</u>, 954 F.Supp. 588 (W.D.N.Y. 1997)(Skretny, D.J.). The defendants also cite to

Muhammad v. Lowe, 2012 WL 4509836 (W.D.N.Y. 2012)(Curtin, D.J.). In Muhammad, the

Court found that the defendants had submitted proof that physical force was used by the

defendants because a weapon was found on the plaintiff during a pat down frisk and that the

plaintiff had struck the officer conducting the search. The Court also determined that the

plaintiff's medical records did not reveal an injury. Muhammad, 2012 WL 4509836 at *5.  The

defendants also cite to Felder v. Diebel, 2012 U.S. Dist. LEXIS 181213 (W.D.N.Y. 2012)(Curtin,

D.J.), in which the Court held that a plaintiff who claimed to have been slapped and grabbed by

the throat in connection with a pat frisk had not alleged specific facts alleging malicious intent on

the part of the defendant and thus, no reasonable jury could find that the defendant had acted

maliciously and sadistically to cause the plaintiff harm. Felder, 2012 U.S. Dist. LEXIS 181213 at

*13-14. [9]

    In the instant case, a question of fact exists as to why the defendants entered the

plaintiff's cell. While the defendants contend that they did so to get Evans under control and to

restore order after the plaintiff head butted Murphy, the plaintiff alleges that the defendants

entered his cell unprovoked, stripped him of his clothes and placed him in a waist chain and leg

restraints to bring him to the shower area where he believed he would be further assaulted.  Many

of the injuries alleged by the plaintiff, by his own testimony, occurred because the plaintiff was

thrashing wildly and refused to follow the defendants' directions to stop resisting while they

placed him in the restraints.[10]  In light of these admissions, such injuries cannot be said to have

---

[9]   It is noted that the plaintiff in Felder did not file any response to the defendants'
motion for summary judgment. Felder, 2012 U.S. Dist. LEXIS 181213 at * 2.

[10]   As noted above, the plaintiff acknowledges the cut on his thigh, as well as abrasions to
his shin and feet were due to the fact that he was thrashing wildly while the officers were putting

been *caused* by any malicious or sadistic conduct on the part of the defendants.  However, after the restraints had been placed on the plaintiff, it appears to be undisputed that the plaintiff stopped resisting and complied with the defendants' directions.  At this point, another question of fact emerges in that: the defendants contend that the plaintiff was then taken to the shower without further incident; but the plaintiff claims that while he was fully restrained[11] Rozell and Reppert each punched him in the face and stomach while still in his cell and that Reppert choked him while in the shower area.[12]   Rozell and Reppert do not contend that it was necessary to punch or choke Evans to restore order, but they instead deny that Evans was punched and choked.  Thus, a question of fact exists as to whether Evans was punched while in his cell or choked while in the shower.  If a trier of fact were to believe that Evans was punched after he was in full restraints and was not resisting the officers, as he claims, a trier of fact might conclude that Rozell and Reppert did so with a malicious and sadistic intent to harm the plaintiff

---

on the restraints (Docket No. 67-1 at page 14-15) and that he was not hit, pushed or kicked by the defendants while the restraints were being applied. (Docket No. 67-1 at page 10). Evans also asserts that the aggravation of the preexisting injuries to his back and shoulder occurred when the defendant put the restraints on him (Docket No. 67-1 at pages 21, 23-26) and that he does not believe that the defendants intended to hurt his back or his shoulder when placing the restraints on him. (Docket No. 67-1 at pages 24-27).

[11]   The plaintiff contends that he was being held by Murphy and Terribilini, but that these defendants were holding him because "when you are in restraints and you have a waist chain on you, you got to have two officers that escort you and walk with you." (Docket No.  67-1 at page 31).  Evans testified that he did not believe that Murphy and Terribilini were holding him so that he could be choked and that Murphy and Terribiliini did not know that he was going to be choked. (Docket No.  67-1 at page 31).

[12]   The plaintiff admits that the other defendants did not strike him, but claims that Davis, Murphy, Terribilini and Pulsifer are liable because failed to intervene.  (Docket No. 72 at page 8).  The failure to protect claim against these defendants is discussed below.

even though Evans suffered, by his own account, only a puffy cheek for 2 or 3 days.[13]  The same

is true with respect to the plaintiff's claim that he was choked while in the shower area.  Under

the rubric set forth by Hudson and Wilkins, such a question of fact is sufficient to preclude

summary judgment as to defendants Rozell and Reppert notwithstanding the fact that the plaintiff

did not suffer a serious injury.[14]


Inconsistencies in Plaintiff's Claims

The defendants assert that the plaintiff's claims have been so inconsistent that summary

judgment is warranted because no reasonable person would give credit to the plaintiff's

allegations. (Docket No.  57 at page 17).  In this regard, the defendants cite to Jeffreys v. City of

New York, 426 F.3d 549, 554 (2nd Cir. 2005).  In Jeffreys, the plaintiff had admitted on three

occasions that he had "jumped" from the third story window of the school he was burglarizing.

Nine months after being arrested, he claimed that police had thrown him out of the window.  The

Second Circuit stated that while "it is undoubtedly the duty of district courts not to weigh the

credibility of the parties at the summary judgment stage, in the rare circumstance where the

plaintiff relies almost exclusively on his own testimony, much of which is contradictory and

---

[13]   The defendants challenge the credibility of the plaintiff's claim that he was punched because the records memorializing the plaintiff's examination by medical staff on the day of the incident do not reflect that he complained on being punched in the face or stomach.  (Docket No. 57 at page 13).  While this certainly is evidence weighing against the plaintiff's claims, it does not conclusively refute the claim.

[14]   For purposes of this analysis, the Court assumes the plaintiff's allegations that the defendants entered his cell without being provoked to be true.  The Court notes, however, that even if the defendants entered the cell in response to Evans' head butting Murphy, a question of fact would still remain regarding whether Evans was punched by Rozell and Reppert after the plaintiff had been placed in restraints and was no longer resisting.

incomplete, it will be impossible for a district court to determine whether "the jury could

reasonably find for the plaintiff ... and thus whether there are any 'genuine' issues of material

fact, without making some assessment of the plaintiff's account. Under these circumstances, the

moving party still must meet the difficult burden of demonstrating that there is no evidence in the

record upon which a reasonable factfinder could base a verdict in the plaintiff's favor." Jeffreys,

426 F.3d at 554.  In light of his previous admissions that he had jumped from the window, and

the fact that no mention was made to medical workers or non-arresting officers that he had been

beaten, the Court concluded that there was no evidence upon which a reasonable factfinder could

base a verdict in the plaintiff's favor. Jeffreys, 426 F.3d at 554-555.  Here, the defendants argue

that Evans is relying solely on his own testimony which is contradictory and incomplete, and that

the plaintiff's testimony has been contradicted by evidence produced by the defense. (Docket No.

57 at page 17).   With respect to inconsistencies, the defendants assert that the plaintiff's original

complaint alleged that all of the defendants "jumped" him, but that Evans now admits that he

was not assaulted by Murphy, Terribilini, Davis or Pulsifer. (Docket No.  57 at page 17).  In his

original Complaint, Evans does state that all of the defendants entered his cell "and started

assaulting" him because he wrote a grievance." However, the allegations in the Complaint

specifically allege only that Rozell and Reppert punched him and that Pulsifer did not intervene.

(Docket No.  1 at page 5).  The plaintiff's amended pleadings contain similar allegations

regarding the January 13, 2012 incident.  The plaintiff pleadings do not include any specific

allegations of being struck by Davis, Murphy, Terribilini or Pulsifer.  The fact that the plaintiff

included all of the defendants who he claims were present at the time of the incident as having

participated in "assaulting" him, does not render the allegations so inconsistent as to reach the

level in <u>Jeffreys</u>.  The defendants also point to the fact that they have presented testimonial

evidence that Rozell arrived at the scene of the incident after the plaintiff had been restrained and

order had been restored, which is corroborated by the fact that Rozell is not mentioned in the use-

of-force reports filed by Murphy and Reppert.  The fact that Rozell claims to have arrived at the

scene of the incident late and is not mentioned in the use-of-force reports creates questions of

fact regarding the plaintiff's claims, but does not conclusively refute them. The same is true with

respect to the fact that the defendants have submitted testimonial evidence that only Murphy and

Terribilini escorted Evans to the showers, and that Reppert did not go to the shower area.  The

defendants also argue that the plaintiff's claim that Davis and Rozell enlisted the other officers to

retaliate against Evans on their behalf because they did not want to be "on radar" with the

administration, is inconsistent with the plaintiff's claim that Davis and Rozell participated in the

incident. Finally, the defendants assert that the fact that Evans did not claim to have been choked

in the shower area until he submitted his proposed Second Amended Complaint four months

after commencing this action also renders the plaintiff's claims incredible.  The plaintiff's delay

in asserting this claim may cause a trier of fact to question its credibility. However, this is not a

case like <u>Jeffreys</u>, where the plaintiff had made prior admissions contrary to the claim being

asserted.  Moreover, the content of the testimonial and documentary evidence pointed to by the

defendants was created by the defendants, and thus, under the defendants' control. Again, while

this evidence weighs against the plaintiff's claims, it does not conclusively refute them.  The

Court cannot conclude, as a matter of law, that a reasonable trier of fact could not believe Evans'

testimony that Rozell and Reppert punched Evans or that Reppert choked the plaintiff, as Evans

claims.

Failure to Protect

While Evans asserts that only Rozell and Reppert allegedly struck him, he asserts that

Davis, Murphy, Terribilini and Pulsifer are liable because they failed to intervene.  (Docket No.

72 at page 8). To establish liability under a failure to intervene theory, a plaintiff must prove the

use of excessive force by someone other than the individual and that the defendant under

consideration: 1) possessed actual knowledge of the use by another corrections officer of

excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring;

and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable

measures to end the use of excessive force. Curley v. Village of Suffern, 268 F.3d 65, 72 (2d

Cir.2001).  The plaintiff has failed to articulate a basis upon which a reasonable trier of fact could

conclude that Davis, Murphy, Terribilini and Pulsifer had prior knowledge that Rozell and

Reppert were going to strike Evans, or that they had a reasonable opportunity to take actions to

intervene. Indeed, as noted above, Evans acknowledged that although Murphy and Terribilini

were holding him, they were doing so because Evans had been placed in waist chains and

restraints, and not so that Rozell or Reppert could strike the plaintiff. (Docket No.  67-1 at page

31).  Moreover, while the plaintiff characterized his claims against Davis, Murphy and Terribilini

as constituting a failure to protect in conclusory manner (Docket No.  72 at page 8), Evans'

argument and analysis with respect to his failure to protect claim focuses exclusively on Pulsifer.

(Docket No.  72 at pages 13-16).  In this regard, Evans does not point to any evidence that

Pulsifer possessed knowledge that Rozell and Reppert were going to punch him, but instead

argues that Pulsifer did not investigate the situation or reprimand Rozell or Reppert *after* the

alleged incident took place. (Docket No.  72 at page 15).  This is insufficient to maintain a claim

based upon a failure to intervene or protect.

To the extent this claim is asserted against Pulsifer, it must also be dismissed based upon the plaintiff's failure to file a grievance against Pulsifer. It is well settled that the Prison Litigation Reform Act ("PLRA") provides that "[no] action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The PLRA's "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).  There does not appear to be a factual dispute that Evans did not name Pulsifer in the grievance he filed relating to the January 13, 2012 incident. (See Grievance relating to January 13, 2012 Incident, attached as Exhibit A to Docket No.  65).  Thus, even if the plaintiff had otherwise satisfied his burden under Curley, this claim would have to be dismissed as against Pulsifer. See Hill v. Curcione, 657 F.3d 116 (2nd Cir. 2011)(There being no evidence that a grievance ever was filed against Williams by Hill, the exhaustion requirement of the PLRA has not been satisfied, and no genuine issue of material fact stands in the way of summary judgment in her favor.).

In sum, to the extent that the plaintiff asserts failure to intervene claims against the defendants, the defendants' motion for summary judgment should be granted.

**Retaliation Claim**

To the extent that the plaintiff has asserted a separate claim of retaliation by the defendants based upon his filing of a grievance, this claim should also be dismissed. To succeed in maintaining a retaliation claim, a plaintiff must show that 1) the conduct cited as the cause for retaliation is protected; 2) the defendant took adverse action against the plaintiff; and 3) there was a causal connection between the protected conduct and the adverse action. Davis v. Goord, 320 F.3d 346 (2nd Cir. 2003). The Second Circuit has advised that courts should be skeptical of prisoner retaliation claims, as "virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." Spies v. Kelleher, 151 Fed.Appx. 72 (2nd Cir. 2005) quoting Dawes v. Walker, 239 F.3d 489 (2nd Cir. 2001) overruled on other grounds Swierkiewicz v. Sorema N. A., 534 U.S. 506 (2002). Indeed, in Flaherty v. Coughlin, 713 F.2d. 10, 13 (1983), the Court held that a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone.

Here, the plaintiff has asserted only in a conclusory manner that the events which allegedly took place on January 13, 2012 were in retaliation for his filing of a grievance. The plaintiff admits that his claim is based only upon his assumption, and that he has no evidence of retaliation by the defendants. (Docket No.  67-1 at page 84).  Such conclusory allegations are insufficient to permit a reasonable trier of fact to conclude that the plaintiff can meet his burden to prove a claim of retaliation.

**Qualified Immunity**

The defendants contend that they are entitled to qualified immunity. (Docket No. 57 at page 24). Public officials are protected by qualified immunity so long as "their conduct does not violate clearly established ... rights of which a reasonable person would have known." Vincent v. Yelich. 718 F.3d 157, 166 (2d Cir.2013). The qualified immunity inquiry "turns primarily on objective factors." Id (quoting Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982)). "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." Harlow, 457 U.S. at 818-19.  The notion that " 'unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment' " is not a new or unusual constitutional principle. See Whitley, 475 U.S. at 319 (quoting Ingraham v. Wright, 430 U.S. 651, 670 (1977)); see also Estelle v. Gamble, 429 U.S. 97, 103 (1976).

As discussed above, questions of fact exist as to the conduct of Rozell and Reppert on January 13, 2012. An individual's right to be free from excessive force is a well-settled principal in American jurisprudence. Drawing all reasonable inferences in favor of the plaintiff, as the Court is required to do in the context of the instant motion, the Court cannot conclude that the officers involved would be entitled to qualified immunity. Chaney v. Koupash, 2008 WL 5423419 (N.D.N.Y.,2008) (It was clearly established that inmates had an Eighth Amendment right to be free from excessive force. Thus, accepting all of plaintiffs' allegations about the physical assaults as true, qualified immunity cannot be granted.). Thus, the motion for summary judgment based upon qualified immunity should be denied.

22

**Conclusion**

Based on the above, plaintiff's motion for a temporary restraining order should be DENIED; the defendants' motion for summary judgment should be GRANTED IN PART AND DENIED IN PART consistent with the above.

Pursuant to 28 U.S.C.  §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y.  Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME,  OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y.  Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v.

<u>Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y.  Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3)may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
February 11, 2014

24